UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES RONNIE HOLLOWAY, II,

    Petitioner,

v.

STEVEN RIVARD,

    Respondent.

Case No. 16-11059
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1]**

James Holloway was convicted of assault with intent to murder for the beating of his former fiancé. He is serving a sentence of fifteen- to thirty-years imprisonment. The state courts denied him relief in challenges to his conviction and sentence. Now Holloway petitions the Court for a writ of habeas corpus. (ECF No. 1). The claims in Holloway's petition lack merit.

**I.**

**A.**

James Holloway and Kimberly Grace were engaged. They lived together in Warren, Michigan with their two children. (*Id.* at PageID.247–248.) But in the summer of 2013, Holloway pawned Grace's engagement ring to pay off his debts to a drug dealer. (*Id.* at PageID.255–256.) Grace and Holloway's relationship deteriorated, and Grace kicked Holloway out. (*Id.* at PageID.248–249.)

Around 9pm on July 19, 2013, Holloway used his key to return home, unwelcome. (ECF No. 11, PageID.247, 249–252.) Grace and Holloway argued over the pawned engagement ring. (*Id.* at PageID.256.) Holloway unpersuasively reassured Grace that pawning the ring was the only way to protect her and the kids from the drug dealer. (*Id.* at PageID.256.)

Grace feared Holloway, especially that night, because he refused to leave. (*Id.* at PageID.252.) Feeling she could not force him to leave, Grace went to the home's second floor, where she put the kids to bed and then went to her own bedroom. (*Id.*) Holloway stayed downstairs. (*Id.*)

Later that night, Holloway went upstairs. Grace was awakened by the sound of Holloway entering her bedroom and locking the door. (*Id.* at PageID.258.) Grace was sleeping on her stomach and Holloway hit her on the back of the head with something hard and metal. (*Id.* at PageID.259.) Then Holloway threw her on the floor and pressed the same metal object to her throat. (*Id*. at 260–262.) Grace passed out. (*Id*. at 263.)

When she came to, she was disoriented and bleeding heavily. (ECF No. 11, PageID.265–266.) Holloway, still in the room, dragged her to the bathroom, where he made her shower, fully clothed. (*Id.* at PageID.267.) Holloway paced around the bathroom. (*Id.*)

Grace finished showering and tried to leave. (*Id.*) Holloway stopped her. (*Id.* at PageID.269.) She considering escaping through the bathroom window, but fear held her back. (*Id.*) Then Holloway took her back into the bedroom. (*Id.*)

Maybe she passed out, maybe he pushed her, either way Grace ended up on the bedroom floor again. (ECF No. 11, PageID.269.) She remembered Holloway choking her. (*Id.* at PageID.269–270.) Once more, she lost consciousness. (*Id.* at PageID.271.)

When she regained consciousness, she heard Holloway sleeping on the bed. (*Id.*) Quietly, she crawled to the kids' rooms. (*Id.* at PageID.271–272.) She gathered her children, crept downstairs and, with the help of her eight-year-old son, drove to Holloway's mother's home. (*Id*. at PageID.272–273.) From there, an ambulance took Grace to the hospital, where she needed eighteen staples to close the gash in her head. (*Id*. at 274–275.)

**B.**

Holloway told the jury a much different story. Holloway denied trying to or intending to kill Grace. (ECF No. 11, PageID.433.) He said he and Grace had been together for about fifteen years. (ECF No. 11, PageID.412.) Despite their history, in July 2013, Grace returned the engagement ring. (*Id.*) But she did not ask him to move out, and never gave him any indication she wanted him out. (*Id.* at PageID.413–414.)

About 4:30 in the afternoon of July 19th, Holloway came home from work to find Grace angry with him. (ECF No. 11, PageID.414–416.) Grace discovered that he had pawned the engagement ring to pay down some debt. (*Id*. at PageID.416.) Holloway tried to explain that he had been out of work for a period of time, and people he knew lent him money to keep him afloat while he found a new job. (*Id.*) Eventually, Holloway said, the argument passed, and the rest of the evening was peaceful. (*Id*. at PageID.417–419.) The family ate dinner, watched a movie, and then he and Grace put the children to bed and went to the bedroom they shared. (*Id*.)

Next thing Holloway remembered, his alarm was buzzing at 4:15 the next morning. (ECF No. 11, PageID.419.) As he climbed out of bed, he stepped on a barbell near the bedside and his ankle "cracked." (*Id.* at PageID.420.) In pain and upset, he hurled the barbell across the bedroom. (*Id*.)

Seconds later, Holloway realized the barbell hit Grace in the head. (ECF No. 11, PageID.422.) Holloway saw Grace silently walking toward him, carrying the barbell. (*Id.*) Then she came at him, pushing him in the chest. (*Id.* at PageID.423.) Holloway put his hand up in self-defense, but the force of Grace's push and the pain from his ankle caused them both to fall to the ground. (*Id*. at PageID.423–424.)

On the ground, they tussled over the barbell. (ECF No. 11, PageID.425.) Eventually, Grace ended up on top of Holloway, while Holloway worked to wrench the barbell from Grace's hands. (*Id.*) With Grace on top of him, Holloway insisted he "pull[ed] the bar up from her" and somehow managed to force the barbell against her neck. (*Id.*)

Grace was still on top of Holloway but now the bar was against her neck. (ECF No. 11, PageID.425.) She said she could not breathe. (*Id.*) Holloway immediately let go. (*Id.*) And Grace threw the barbell under the bed. (*Id.*)

At that moment, Holloway turned on the light and noticed Grace was bleeding. (*Id.* at PageID.426.) Holloway offered to call an ambulance, but Grace declined. (*Id.*) Instead, she decided to shower and instructed Holloway to clean up a bit. (*Id.*) While Grace cleaned up, Holloway wiped the room down with Clorox products. (*Id.* at PageID.427.)

After seeing all the blood, Holloway opted not to call 911 or go into work. (ECF No. 11, PageID. 428–429.) He told Grace he would stay home to care for her. (*Id.* at PageID.428.) Relieved, Grace fell asleep on the floor, because the bed had blood on it. (*Id.* at PageID.428–429.)

Exhausted and bothered by a hurt ankle, Holloway took five or six Tylenol PM tablets. (ECF No. 11, PageID.429–431.) But he had already taken a Vicodin that night. (*Id.* at PageID.430–431.) And the combination put him to sleep almost immediately. (*Id.*) Next thing he knew, he was in a hospital after suffering a seizure-like reaction to the combination of pills. (*Id.* at PageID.432.)

### C.

The jury believed Grace. Holloway was convicted of assault with intent to murder. Mich. Comp. Laws § 750.83. The trial court imposed a sentence of 15- to 30-years imprisonment. And the Michigan Court of Appeals affirmed Holloway's conviction. *People v. Holloway*, No. 321228, 2015 WL 3797741 (Mich. Ct. App. 2015).

Not long after the Michigan Court of Appeals affirmed, the Michigan Supreme Court materially altered Michigan's law of criminal sentencing. *See People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). So the Michigan Supreme Court remanded Holloway's case to see if the trial court would have imposed a materially different sentence under the new sentencing procedure. *See People v. Holloway*, 872 N.W.2d 478 (Mich. 2015). In all other respects, the supreme court denied leave to appeal. *Id.* The trial court gave Holloway the same sentence. *See Holloway*, No. 13-003469-FC, Register of Actions (ECF No. 11-1).

Holloway then filed the pending habeas petition. His claims lack merit.

## II.

The Antiterrorism and Effective Death Penalty Act governs Holloway's habeas corpus petition. *See* 28 U.S.C. § 2254. AEDPA restricts a federal court's power to upset a state criminal conviction. Habeas corpus relief is not appropriate on "any claim that was adjudicated on the merits" by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d).

## III.

Holloway's petition raises four claims. He says the evidence was insufficient to convict him beyond a reasonable doubt; twice his due process rights were violated by the admission of other-acts evidence; and his sentence runs afoul of the constitution for various reasons.

### A.

Holloway's first claim concerns the sufficiency of the evidence. He thinks the prosecutor never proved beyond a reasonable doubt that Holloway possessed the requisite intent to murder.

The Michigan Court of Appeals addressed this claim on the merits. The state court held that a rational jury could reasonably infer Holloway's intent to murder based on his conduct. *Holloway*, 2015 WL 3797741 at *1-2. Holloway struck Grace in the back of her head with a heavy metal bar and twice nearly choked her to death. *Id.* Grace told the jury she believed that she was going to die during the attack, and she suffered serious injuries. *Id.* Considering all the evidence of a violent assault, gleaned from Grace's testimony, the testimony of a responding police officer, and Grace's injuries, sufficient evidence existed to prove Holloway's intent beyond a reasonable doubt. *Id.*

On habeas corpus review, state court determinations of sufficient evidence receive deferential treatment. The deferential review proceeds in two steps. The first is "whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, even if a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, if the state court's sufficiency determination is nonetheless reasonable, habeas corpus relief is not permitted. *See id*. (citing 28 U.S.C. § 2254(d)(2)).

The Michigan Court of Appeals' determination is clearly reasonable. The jury heard that Holloway entered the bedroom where Grace was sleeping and locked the door behind him. He bashed Grace over the head with a metal bar then choked her until she lost consciousness. When she came to, after a brief respite, Holloway again choked her until she passed out. Grace's testimony is enough to prove Holloway's intent to kill. *See Warren v. Smith*, 161 F.3d 358, 361–62 (6th Cir. 1998). At best, Holloways asks the Court to "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [the Court's] judgment for that of the jury." *Brown*, 567 F.3d

at 205. None of that is a proper way to analyze a sufficiency-of-the-evidence claim. *Id.* Holloway is not entitled to relief.

**B.**

Holloway's second and third claims concern the admission of other-acts evidence. Grace told the jury that Holloway pawned her engagement ring because he owed a drug dealer some money, underscoring Holloway's connection to drugs. And Grace told the jury about prior instances of Holloway's domestic abuse, highlighting for the jury his past incidents of domestic violence. Holloway says he should have received pretrial notice of Grace's testimony about drugs and domestic violence, as required by Mich. R. Evid. 404(b). And he says the admission of Grace's testimony violated his right to a fair trial.

Holloway's pretrial notice claim fails. Holloway seeks relief based on violations of the Michigan Rules of Evidence. But errors of state law are not an avenue for habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62 (1991).

Holloway also thinks the admission of Grace's other-acts testimony violated federal law. Regarding the admission of prior bad acts, there is no clearly established Supreme Court precedent setting federal law. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991). Nevertheless, a state court's evidentiary ruling may support habeas relief where it is "so egregious that it results in a denial of fundamental fairness" and thus violates the Due Process Clause. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). But the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as

7

to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

Holloway has not shown an unreasonable application of the general due-process rule. The Michigan Court of Appeals reasonably concluded that Grace's testimony was admissible. Grace telling the jury about Holloway's debt to a drug dealer explained why Holloway grew so angry on the evening of July 19. And his anger on that night was probative of Holloway's intent to kill. Moreover, the state court reasonably concluded that Grace's testimony about prior instances of domestic violence was admissible. At a minimum, Holloway's version of events made probative Grace's testimony about prior domestic abuse. After all, Holloway tried to convince the jury that Grace was the aggressor, after Holloway unintentionally threw a barbell at her. And Holloway believed Grace practically choked herself trying to hurt Holloway. So telling the jury about Holloway's prior domestic incidents had less to do with propensity and more to do with rebutting Holloway's version of events. Plus it allowed the jury to understand Grace's actions on July 19. Prior domestic abuse explained why she feared the father of her children, why she did not try to force Holloway out of the house, and why an argument escalated to violence. Thus, under these circumstances, Grace's testimony did not deprive Holloway of a fair trial. Holloway is not entitled to habeas corpus relief.

## C.

Finally, Holloway raises three sentencing-related claims. First he thinks he was entitled to be sentenced by the same judge who presided over his trial. Then he says his sentencing guidelines were improperly scored. And finally, Holloway says his sentence violates *Alleyne v. United States*, 570 U.S. 99 (2013). None succeed.

A state criminal defendant has no federal constitutional right to be sentenced by the same judge who presided over his trial. *See Winter v. United States*, No. , 1991 WL 39648, *1 (6th Cir. March 21, 1991) (denying defendant's claim that right to due process was violated when he was sentenced by a different judge); *United States ex rel Fields v. Fitzpatrick*, 548 F.2d 105, 107 (3d Cir. 1977) ("We do not recognize a constitutional right to be sentenced by one's trial judge in every case."). And a claim that the state trial court incorrectly scored, calculated, or applied the state legislative sentencing guidelines is not a basis for habeas corpus relief. *See Cotton v. Mackie*, No. 17-1059, 2017 WL 3686510, *2 (6th Cir. May 23, 2017) (citing *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.") Finally, the Michigan Supreme Court's remand in light of *Lockridge* moots the *Alleyne* claim. On remand, the state court granted him relief—the opportunity for re-sentencing under the now discretionary state sentencing guidelines. And based on the discretionary guidelines, he was given the same sentence. So Holloway's sentence does not violate *Alleyne*. None of Holloway's sentencing claims merit habeas relief.

**IV.**

For the foregoing reasons, the Court DENIES Holloway's petition for a writ of habeas corpus. (ECF No. 1.) And because no reasonable jurist would debate the Courts' disposition of these claims, the Court will not issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). But if petitioner nonetheless chooses to appeal, he may proceed in forma pauperis. See 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON

UNITED STATES DISTRICT JUDGE

Date: March 22, 2019

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, March 22, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

                                      <u>s/William Barkholz</u>
                                      Case Manager